IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IVAN VETCHER, § | |
| PLAINTIFF, § | |
| § | |
| V. § | CIVIL CASE NO. 3:19-CV-811-C-BK |
| § | |
| UNKNOWN IMMIGRATIONS AND § | |
| CUSTOMS ENFORCEMENT § | |
| SUPERVISORS, ET AL., § | |
| DEFENDANTS. § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this civil action filed by *pro se* Plaintiff Ivan Vetcher was referred to the United States magistrate judge for management, including issuing findings and a recommended disposition where appropriate.  The Court granted Vetcher's motion to proceed *in forma pauperis* but did not issue process pending judicial screening.  As detailed here, this action should be **DISMISSED WITH PREJUDICE** for failure to state a claim.

I.   BACKGROUND

Between 2014 and 2018, while detained by U.S. Immigration and Customs Enforcement (ICE), Vetcher filed numerous legal actions challenging his removal and complaining about his conditions of confinement, denial of access to courts, and retaliation.  The Court of Appeals for the Fifth Circuit recently upheld Vetcher's removal to Russia and rejected his arguments that deficiencies in the ICE detention facility's law libraries hindered his efforts to pursue a claim. *Vetcher v. Barr*, 953 F.3d 361 (5th Cir. 2020), *pet. for cert. filed*, No. 19-1437 (U.S. June 26, 2020).

On April 1, 2019, following his removal, Vetcher filed the 40-page complaint in this action against numerous defendants, including ICE and Johnson County Jail (JCJ) officials, asserting constitutional violations under 42 U.S.C. § 1983 and *Bivens*[1] and seeking declaratory and monetary relief.  Doc. 3.  Vetcher alleges Defendants (1) retaliated against him for exercising his right to challenge his removal and conditions of confinement, and (2) obstructed his access to the courts.  As he summarizes his claims—

> Defendants took adverse action to chill my exercise of protected rights.  Supervisory Defendants implemented "diesel therapy" for him and other detainees who filed administrative appeals, and complained about constitutional violations and conditions of confinement …. ICES [ICE Supervisors] … gave tacit approval for subordinate Defendants to act with impunity. Such a policy enabled the subordinate Defendants to pursue retaliation against him … through use of excessive force, solitary confinement, and withholding rights and privileges without due process. ICES knew doing so would make an example out of detainees wishing to complain and litigate their cases, reduce the amount of would-be litigants, and increase deportations to showcase the effectiveness of increased spending.  In the course of retaliation, Defendants used physical force without justifiable reason against Vetcher.  While Vetcher was lying prone Johnson County officers under direction of Captain King maced him.
>
> ***
>
> Defendants participated in a scheme that withheld crucial information necessary for detained *pro se* non-citizens to challenge charges of removal, mandatory detention, criminal convictions, and conditions of confinement. Defendants knew when they implemented law library guidelines the provided materials were insufficient for pro se litigants to challenge allegations of removal, mandatory detention, criminal convictions, and conditions of confinement. Despite being notified, the Defendants failed to provide the requested information. Failing to disprove allegations of removal subjected me and other non-citizens to mandatory incarceration continuing the entire length of immigration detention. ICE used this choice to coerce detainees to retire from litigation (and their legal right to contest removal) and choose deportation.

Doc. 3 at 3-5.

Having reviewed all of the applicable pleadings and law, the Court concludes Vetcher's claims are either time-barred or lack facial plausibility and, thus, should be dismissed.

---

[1] *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

## II. ANALYSIS

Because Vetcher is proceeding *in forma pauperis*, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). That statute provides in part for the *sua sponte* dismissal of a complaint if the Court finds that it fails to state a claim upon which relief may be granted. A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

The Court must always liberally construe pleadings filed by *pro se* litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("'[A] *pro se* complaint … must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoted case omitted)); *Cf.* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."). Even under this most liberal construction, however, Vetcher's complaint fails to state a viable legal claim.

### A. All Claims Accruing on or Before March 29, 2017 are Time Barred

Vetcher raises claims related to incidents that occurred between July 2014 and September 2017, but did not file his complaint until April 1, 2019. A two-year statute of limitations applies to all of Vetcher's claims. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (applying state forum's personal injury statute of limitations in § 1983 case); *Spotts v. United States*, 613 F.3d 559, 573 (5th Cir. 2010) (applying Texas two-year personal injury limitations period to *Bivens* action. Moreover, Vetcher has neither alleged nor demonstrated that he is entitled to equitable tolling of the limitations' period due to a "legal disability," and his detention does not provide a basis for tolling. TEX. CIV. PRAC. & REM. CODE ANN. § 16.001(a) (West 2019); *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). Thus, under the facts Vetcher alleges in his complaint, all claims arising from events occurring on or before March 29, 2017, are barred by limitations. *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations … [are] barred by

limitations, the complaint is subject to dismissal for failure to state a claim"); *Stanley*, 464 F.3d at 568 (raising limitations *sua sponte* in *in forma pauperis* actions).

### B. Failure to State a Claim of Retaliation

It is well established that prison officials may not retaliate against a prisoner for exercising his constitutional rights. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). However, if an inmate is unable to demonstrate the violation of a specific constitutional right, his retaliation claim also fails. *See Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (per curiam). Here, as set out below, neither Vetcher's excessive force nor his punitive segregation claims implicate a due process violation. As such, he fails to establish that he was retaliated against for exercising a constitutional right.

#### 1. *Due Process Rights Not Violated by the Use of Pepper Spray*

Vetcher asserts the use of pepper spray against him on March 30, 2017 constituted excessive force. Doc. 3 at 9-13. He states Captain King twice asked him to turnover his personal notes and, when he refused, King unsuccessfully tried to snatch them from Vetcher. Doc. 3 at 10-12. After King called for backup and a video camera, five JCJ officers eventually carried Vetcher outside the building and forced him to the ground. Vetcher admits King twice more asked him to turn over his private notes and, when he again refused, King ordered the officers, "spray him until he lets go." Doc. 3 at 13. Vetcher avers that his "eyes burned" and "[t]he pain … blinded him and he could not see or think." *Id.* He further contends that the "vapor spray residue" in his hair became "airborne" due to the hot shower water, causing him to retch and cough for more than twenty minutes—his "lungs in a spasm due to the presence of the chemical in the air." *Id.* Vetcher also complains that he felt a burning sensation in his genitals for the next two days. Doc. 3 at 13; Doc. 15 at 4, 8.

4

Because an alien detainee is treated as "the equivalent of a pretrial detainee," *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000), Vetcher's excessive force claim implicates only the Due Process Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015) ("'[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.'" (quoted case omitted)); *Rroku v. Cole*, 726 F. App'x 201, 205-06 (5th Cir. 2018) (per curiam) (same as to alien detainee's *Bivens* claims). In *Kingsley*, the Supreme Court held that the court must use an objective standard in assessing whether the use of force on a detainee was excessive. 576 U.S. at 396-97 ("[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable"). The Court cautioned that "[a] court (judge or jury) cannot apply this standard mechanically" and that "[o]bjective reasonableness turns on the 'facts and circumstances of each particular case'" *Id.* at 397 (quote cases omitted). In addition, the "court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer," *Id.* at 399, considering:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397.

In this case, Vetcher concedes the pepper spray was used in response to his repeated refusal to comply with King's order to turn over his private notes after he had been asked to do so at least four times. Because of Vetcher's persistent refusal to comply with King's demand, some application of force was reasonably necessary to restore discipline. Rather than engaging in forceful physical contact, King opted to use chemical spray to gain compliance. Under these circumstances, the limited application of chemical spray was only a moderate use of force. *See*

5

*Tennyson v. Villarreal*, 801 F. App'x 295, 296 (5th Cir. 2020) (finding that force used to subdue a pretrial detainee and handcuff him was objectively reasonable because the detainee refused to comply with an order and the detention officers were attempting to diffuse a disruptive situation involving at least eight non-compliant detainees); *Grandpre v. Gusman*, No. 17-8935-DEK, 2018 WL 3632364, at *6 (E.D. La. July 31, 2018) ("[A] limited application of chemical spray 'to control a recalcitrant inmate constitutes a tempered response by prison officials when compared to other forms of force.'" (quoting *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)).

Further, Vetcher admits that the JCJ officers instructed him to shower right after the use of the pepper spray, and that a nurse subsequently examined him and took his blood pressure. Doc. 15 at 5. Offering a shower and providing medical attention after the administration of a chemical spray are well recognized means to temper the severity of the pepper spray. *See, e.g., Martin v. Seal*, 510 F. App'x 309, 313 (5th Cir. 2013) (per curiam). Even the forceful coughing that Vetcher alleges was triggered by the vapor spray residue in the hot shower and the burning sensation in his eyes and genitals only amount to brief pain from the chemical spray. *See* Doc. 15 at 5 (conceding his injury was only "the chemical burn").

In sum, Vetcher alleges no facts to plausibly suggest that the force used was objectively unreasonable and, thereby, violated his constitutional rights.

    2. *Transfers to Solitary Confinement Were Not Due Process Violations*

On March 30, 2017, following the pepper-spray incident and disciplinary action, Vetcher was transferred to the secure housing unit (SHU)—or solitary confinement—for 28 days. Doc. 15 at 1. On June 30, 2017, Vetcher was again transferred to SHU, this time for 14 days, "under the guise that [he] posed a security threat," for lecturing an officer on civil rights law. Doc. 15 at 17-18. Vetcher alleges that (1) "human interaction was severely restricted in SHU," (2) he was

"confined to an 8 x 6 cell for ~23 hours per day except for one recreational hour in an enclosed concrete room," and (3) he essentially had no access to the law library. Doc. 15 at 2.

Insofar as Vetcher intends to raise a due process claim based on his detention in SHU, such claim fails. In the absence of extraordinary conditions, administrative segregation is not an atypical and significant enough hardship to trigger the protections of the Due Process Clause. *See Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (per curiam) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The same standard applies to pretrial and alien detainees incarcerated for removal. *See Edwards*, 209 F.3d at 778 (treating "a person detained for deportation to be the equivalent of a pretrial detainee"); *Rhine v. City of Mansfield*, 499 F. App'x. 334, 335 (5th Cir. 2012) (per curiam) ("[Detainee's] conditions of segregation … were not sufficiently atypical or significant to implicate a due process liberty interest.").

Vetcher alleges only relatively brief periods of segregation, and he does not assert any attendant extraordinary conditions. Consequently, his periods of segregation do not implicate a due process liberty interest and, thus, fail to state a claim.

In sum, because Vetcher has failed to adequately plead the violation of a constitutional right, he has likewise failed to plead a retaliation claim. Thus, his retaliation claim must also be dismissed.

### C. Failure to State a Claim of Inadequate Court Access

Vetcher complains of the denial of access to adequate law library materials and the assistance to seek a bond in May 2017 and contest his removal in October 2017. Doc. 3 at 36; Doc. 15 at 19-23. He contends that "[d]ue to his inability to bring categorical approach challenges, he was subjected to mandatory detention and removal." Doc. 15 at 19, 22.

While prisoners have a constitutional right to adequate access to the courts, that right "encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.'" *Johnson v. Rodriguez*, 110 F.3d 299, 310-11 (5th Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). A detainee must show that he suffered an "actual injury," to wit: "that the alleged shortcomings in the library … hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351.

Vetcher cannot show that, relative to the incidents that allegedly occurred after March 29, 2017, he was prevented from filing pleadings disputing his detention and removability. The appellate court has already rejected Vetcher's similar allegations of inadequate law library resources:

> As a pro se litigant, Vetcher successfully secured an initial stay of removal from this court. Two separate BIA decisions remanded his proceedings back to the IJ. He also preserved all relevant issues for appeal. Vetcher's intermittent successes throughout the course of his pro se efforts are beyond admirable. None of the perceived hindrances Vetcher points out stopped him from being able to research the law, draft, mail and file his pleadings, and appeal his claims for the better part of four years without the assistance of legal counsel. Implicitly, Vetcher argues that since he did not win on his claims (specifically the categorical match argument) and because those materials were unavailable, that there was a due process violation. To his detriment, that is not the legal standard. Accordingly, we find no due process violation here.

*Vetcher*, 953 F.3d at 370. This Court does not revisit those findings. And because Vetcher again alleges no facts that plausibly suggest Defendants denied him adequate access to the courts, he has failed to state a claim.

### D. Attempts to Separate from Legal Materials Likewise Lack Facial Plausibility

In two related claims, Vetcher alleges that an unidentified ICE officer twice attempted to separate him from his legal materials, which he needed to continue his litigation against ICE and to file this action. Doc. 3 at 14-17. On April 27, 2017, the ICE officer allegedly ordered

8

Vetcher, who was in five-point restraints, to carry his boxes of legal materials to the bus or it would be thrown away.  Vetcher avers "[t]he shackles cut and bruised my ankles and handcuffs tore into the skin on my wrists as I struggled to move boxes of legal material to the bus."[2]  Doc. 3 at 15; Doc. 15 at 13.

On May 3, 2017, the same ICE officer allegedly succeeded in separating Vetcher from his legal files, by making eye contact with a Dallas County Jail Liaison, who in turn ordered Vetcher to leave his materials behind (to be picked up by his family) on the bogus reason that they were not permitted at the Dallas County Jail.  Doc. 3 at 15-16.  Vetcher states:

> My transfer to Dallas Jail was due to DEA refiling my old charges that were already resolved.  The legal material that I could not bring, contained police affidavits and conviction records from those charges.  Had the materials been with me, I could have shown the magistrate judge at the initial hearing that this was clearly a double jeopardy.  The new Dallas charges rested on the old police affidavit linked to my record of conviction.  Due to my inability to have this legal material, I was detained in Dallas Jail for 2 months, missed my immigration court hearing in July, and had my detention extended.

Doc. 15 at 14.

Insofar as Vetcher asserts a claim for denial of his right of access to the courts, he again fails to show that the purported separation from his legal materials prevented him from filing pleadings to dispute his detention and removability or to file this action.  Contrary to his allegations and as previously noted, Vetcher persisted in appealing and challenging his removal.  *Vetcher*, 953 F.3d at 370.  He cannot now show that the files he was not permitted to possess hindered his ability to file a pleading or pursue a claim.  *Id*.

---

[2] Vetcher does not assert a claim stemming from his alleged physical injuries.

### III.   LEAVE TO AMEND

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to dismissal. *See Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). However, the Court is not required to grant leave to amend "if the plaintiff has already pleaded his 'best case.'" *Id.* at 768 (giving *pro se* plaintiff opportunity to "amend" through questionnaire). For the reasons outlined herein, Vetcher's claims are fatally infirm. In addition, the Court has already given Vetcher an opportunity to supplement his complaint by his *Answers to Magistrate Judge's Questionnaire*. Doc. 15 at 1. Because he nevertheless failed to cure the infirmities identified herein, the Court concludes that he has already pled his best case and that granting leave to amend would be futile and cause needless delay.

### IV.   CONCLUSION

For the foregoing reasons, Vetcher's complaint should be summarily **DISMISSED WITH PREJUDICE** for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

**SO RECOMMENDED** on November 3, 2020.

*[signature]*

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).